State of Illinois against Anthony S. Brown, 4090135. Counsel, please. Thank you, Eric. May it please the court? Counsel? My client, excuse me, Aaron Brown, took to stand in this trial, admitted he had brass knuckles, admitted he was a felon. Therefore, under the law, he's guilty, except for the defense of necessity. The fact of the situation was the defendant testified he saw two kids, one chasing the other one with brass knuckles. He thought that was a dangerous, bad situation, so he took the brass knuckles away from the kid and put them in his pocket. Ten minutes later, according to his testimony, the police arrived, and for whatever reason, patted down Steve with brass knuckles and arrested him. What did he tell the police? He didn't tell them anything. No one asked him why he had them. I wonder why not. The officers testified they never asked him why he had them. Why didn't he volunteer the information, I don't know the answer to that. According to the trial testimony... It wasn't a question of what he was arrested for, was it? It was what he was arrested for. Was his testimony that he put them in his pocket and simply forgot about them? His testimony, I believe, was he put them in his pocket, and then it was only ten minutes later that he was arrested. I'm not sure he said he forgot about them, but he just put them there for safekeeping. Where was he when he was arrested? He was at a party. Where at the party? That I don't know, Your Honor. If you ask me specifically, I don't know. It seems unclear as to why the police came to the party. I don't know if there was some agreement not to talk about that, but apparently the police were there, there was a big party, and for some reason they went to him and patted him down. They never did say why. And I think the police were asked, if you asked them why he had the brass knuckles, there were two officers. That's why both of them said no, they didn't ask him. Do we know whether the kid's parents were there? We don't know any of that, Your Honor. It was a very short trial. Basically the two cops testified, and then the defendant testified. And then the defense attorney asked for the necessity defense, which I believe the necessity defense talks about the defendant is without blame for developing the situation, which I think he wasn't, but was without blame. Reasoning believed his conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his conduct. Now the public or private injury obviously is one kid chasing another kid with brass knuckles. Arguably it could be a fight, it could be violence with a kid. The injury of his possessing the brass knuckles for ten minutes is pretty minimal, if any. But the case law says that conduct that would otherwise be illegal is justified by necessity only if the conduct was the sole reasonable alternative available under the circumstances. Well, my argument is it's an issue of fact, Your Honor. The standard is a very slight amount of evidence. It's true, maybe the jury wouldn't have believed him. Maybe the jury would have found, as the state argued in its brief, he had other options he could have done once he had the brass knuckles. Maybe he could have done something besides put them in his pocket. But that's a question for the jury. Especially if the standard is very slight evidence. And it's certainly very slight evidence. The other standard being the defendant has a right to put on a defense. And it's clear he had no defense without necessity. I mean, it's what we used to call, when I was trying cases, a long guilty plea. He had no defense without necessity. Isn't there a mental element involved in this crime? That he knowingly possessed them. I suppose that's true. It's almost a strict liability. If you're a felon, you can't possess a lawyer. He couldn't have argued that he didn't knowingly possess. In essence, his testimony would still be that he took them from the kids and then put them in his pocket. He took them from the kids for the kids' safety and then just forgot that he had them. So he didn't knowingly have them at the time that he was arrested. Well, even if he forgot he had them, your honor, he certainly knew he had them when he put them in his pocket. Arguably, as soon as he possessed them, he's a violation of the law. He's a felon possessing brass knuckles. So if he forgot them down the line, he still violated the law as soon as he grabbed them. In fact, the judge seemed to say that that initial, him taking away the brass knuckles, the trial judge, was okay because he said, Now at this time, again assuming the defense version is correct, he took people's exhibit number one from one of the children. That might have been, very likely was, an appropriate action on his part. So it seems to me at least the trial judge acknowledged that that was appropriate at that point. But then seemed to not like the fact that he put them in his pocket and didn't give them away right away. But my point is, that's the question for the jury. And as I said, the jury may not have believed him. But it's very slight evidence, and there's certainly very slight evidence there. It wasn't that he took the brass knuckles and some other injury involved. He got in a fight or something like that. None of that happened. But shouldn't there have been some evidence presented that it was the sole reasonable alternative? Before it would justify the giving of the instruction? Sure. Well, I think it has, but it's an issue of fact though, whether that is the sole or not. Didn't the defense attorney have to present some evidence that it was the sole reasonable alternative, as opposed to this is what he did? Well, arguably it was the sole. What if he put them down on the ground? Somebody could have picked them up. I mean, if he possessed them for maybe days or hours or something, but he only had them ten minutes. Maybe in the back of his mind he was going to put them in his pocket and talk to somebody, and he was going to dispose of them. Again, that's an issue of fact. Well, what was argued in closing by defense counsel? I don't know that he had anything. So there was no closing argument? I can't say. I don't recall there being any argument. There must have been some argument, you're right, but I don't recall what he did, because without this he had nothing. Because the defendant took the stand and admitted he had the brass knuckles and admitted he was a felon. I don't want to mislead the court. I really don't remember what the argument was. What was the testimony about, were they in the cousin's place or the friend's place? I just recall it being at a party, a friend's party, with a bunch of people around. Maybe the cops were called because they were being loud. It doesn't really come out. Why he was signaled out, that doesn't come out either. I thought there was a report of a weapon and he matched the description of the person reported with the weapon. Okay. According to my facts, the officer approached the defendant who's totally matched the description of a suspect. Keep your voice up, please. Keep your voice up? I guess I didn't hear you. I'm sorry. Officer Berschneider approached the defendant whose clothing matched a description of a suspect. Officer Berschneider patted down the defendant and felt the hard object in the defendant's right front pant pocket. He reached into the pocket and pulled out a pair of brass knuckles. He did not ask the defendant how he obtained the brass knuckles. I believe that was pretty much the fact situation. That was presented at trial. In closing, it just seems to me fairly simple. I mean, there was some very slight, admittedly, but some slight evidence of necessity. He had no other defense. He has the right to put on a defense. And he did not get to put on his defense. So I would ask that the case be, this conviction be reversed and it sat down, sent back, remanded, for him to have a trial with his defense and let the jury, who is the fact finder, make this decision whether it's a valid defense or not. Thank you. Thank you, counsel. Counsel, please. Good morning. May it please the court, counsel. To provide you with answers to a couple of the things that you've already questioned, which the state believes the questions you've already raised are the issues that mean this case should be affirmed. The party was taking place in a parking lot at an apartment complex where both the defendant's cousin and a friend of the defendant lived. The testimony is the two actually lived on the same floor and on the same side of the hallway, so apparently only a few doors away from each other. The party itself was in a parking lot of the apartment complex. Beyond that, geographically, the set out, the record doesn't provide any of that. But it was in the parking lot. So was that where the brass knuckles were taken in the parking lot? My understanding is he was in the parking lot, yes. He had returned to the party, according to his own testimony, at the time the police approached him and found the brass knuckles. And they were all there celebrating his 21st birthday. So he was surrounded by his closest friends. As to family, I don't know. There isn't anything about his parents being there, a question that was asked. But he was clearly surrounded by people that he knew. Did you know anything about other adults, like the children's parents being there? There was not. I thought there was some reference to your brief, that perhaps brass knuckles could have been given to the kids' parents or something. The state does believe that that was a viable option. But you're assuming that there were parents there. Correct. If he knew the parents, that he certainly could have taken these children. It was 10.30 at night. He characterized them as children running around outside an apartment complex or down the halls of this apartment complex. Certainly the most prudent option, if he knew the parents, was to take the children to the parents and explain to them his concern. Given that he may not have known that, though, the point is he was surrounded at a party by people that he knew. Clearly, one of these adults could have taken these brass knuckles rather than the defendant personally taking them. So he had other options. This was not his sole option. That's not in the record, right? Correct. But as you pointed out also, he did not point out that he did not have any other options. The evidence does show that all of these people were at this party for him. He didn't take it to anybody else. He put them in his pocket and he returned to the party. Given that there were other options, just by the mere fact that he was surrounded by these other adults, certainly there had to be a trash can, there were options available. But even if you find that his initial taking might have been necessary at that moment, as the trial court found, his continued possession was certainly not justified. After taking it, he estimated there was a 10-minute time between when he took the initial weapons and the police searched him. In that 10 minutes time, he said that when he saw the children, he was headed to his cousin's apartment to use the restroom. Certainly you could drop them off in there securely where nobody else would get them. That's an option. His own testimony. He testified again. The friend lived same floor, same building. He certainly could have dropped them off in there. But telling is the fact that he felt such an urgent need that his only option was to knowingly commit a felony to get this dangerous weapon away from these children, and yet he never told the children why he took them. When he was asked, did you explain to them? No. I never said a word. You just willingly committed a felony because you felt this was so urgent, and yet you offered no explanation. When the police searched him and arrested him, they may not have asked, and it is an assumption on my part, but I think I would have said, this was the situation. I found it to be an accident situation, and I took these weapons from these small children so that they didn't harm themselves. He concedes there was no imminent harm. He did concede he knew that these were weapons? Yes. What he said... So he knew he was in violation of the law? He said that he had never personally had brass knuckles before, but he had seen them and he knew that they caused injury. Yes. And he also conceded... I'm not sure I understand the State's theory that he could have given them to someone else. Is it legal to possess metal knuckles or brass knuckles? I thought it was a violation of 24-1. It is a violation to possess them. Then how could he have transferred them to another individual? He would thereby place them in a position where they're committing a crime. Initially, to take them from the children, assuming the children aren't going to be the ones to go throw them in a trash can, somebody had to take them temporarily. And again, I think that's where the trial court said, I don't necessarily have a problem with the initial taking. But having taken them, he could have thrown them in a trash can, which would not have put any responsibility or created any offense on anybody else. Or he also could have asked another adult to properly dispose of them. Somebody has to touch them at some point to dispose of them. But in that 10 minutes' time, he did not take any effort to dispose of them. Well, if somebody has to touch them to dispose of them, when they touch them, they've taken possession of them. Correct. And that seems to me to suggest, therefore, necessity in certain instances would be a defense that any defendant should have a right to place before the jury. And at that moment that he took them, as the trial court found, that may very well have been a proper defense of necessity. But you can't remove from that the fact that he kept them beyond that for a substantial enough a time for him to return to a party. And his continued possession was not justified. And it is a trial court's responsibility to determine as a matter of law if you have supported your defense theory with the proper amount of evidence. He had to show that this was his sole option as a matter of law to get the defense of necessity. He had to show this was his sole option and that he did it to avoid an imminent harm. He conceived there was no imminent harm. The kids were not fighting. They were not threatening to hurt each other. They were not threatening to hurt anybody else. They were playing. When he called them over, he said they were smiling. There was no imminent danger or imminent harm that his conduct avoided. So he can't meet that part as a matter of law. Have these children been identified? They have not. They were not. And the age was not specifically identified. He simply characterized them as children or at one point even also as youth. So your position is that there wasn't even slight evidence which could have established the defense of necessity? He presented no evidence that his conduct avoided an imminent harm, and he presented no evidence that it was his sole option. And considering the evidence that was there, that you're at a party, you're in an apartment complex, you have access to your cousin's apartment and your friend's apartment, there is a trash can, there is some place to safely dispose of those, even if at the moment of his taking it was necessary. But again, for the defense... Was there slight evidence, though, was my question, that a jury may have found that perhaps he took them from the kids if the jury believed it, put them in his pocket with the intent to dispose of them, and then simply forgot? He may have had evidence of that, but that's not the evidence that's needed for the defense of necessity. It requires more than that. How so? What more does it require? It requires that his action prevented an imminent injury to somebody else. And even his testimony that he took this to prevent them from possibly hurting them is not evidence of imminent injury when they weren't fighting and they weren't threatening to hurt anybody else, including each other with them. And the circumstances lend to the evidence that this was also not his sole option available to him. Again, he had access to several different apartments. How about counsel's argument that once he takes a stand and admits he took the knuckles and was a convicted felon, if he doesn't get the necessity jury instruction, he's left with no argument for acquittal? If that was the defense that he has, then I agree. He doesn't have defense. What did defense counsel argue? Defense counsel argued in his closing argument, one, he conceded there was no injury that was threatened. And then he basically summarized and said this was a young man who had given his previous convictions in criminal instances of his own. Seeing these children playing with something that he thought could cause them harm, he was trying to be a good guy and take the risk. So he essentially argued necessity in spite of the fact he didn't get the jury instruction. With the exception that he did not, that he conceded there was no injury, that his conduct in taking them avoided, which is part of the necessity defense. So he argued part of it, but he did not argue all of it. And therefore, as a matter of law, the court had the right and did properly find under an abuser discretion standard that he did not meet the evidentiary minimum required for that defense of necessity instruction to be given to children. There's no necessity to take an unlawful weapon away from children, even if there is no harm at the moment or the possibility of imminent harm? Is there some kind of obligation to take a weapon out of the hands of a child? It is prudent. But again, we're looking at the defense of necessity. And no, the defense of necessity has these two parts that we can't get away from. Would it be different if it were a loaded gun? I think arguably, yes, it would. It would be different because I think there's the argument there is it is imminent. You have a loaded gun and you have children. Excuse me for my ignorance here. I've never seen brass knuckles. I can't say I have personally seen them, but my understanding is there are four holes. And basically, it is a piece of metal approximately like this with four holes that you would slide your finger in. And then if you would hit somebody with it, you have this metal part rather than your knuckles that would hit them and hurt them. So that's so handy that they're dangerous in and of themselves. They're a flat piece of metal with four holes in it. It's not a loaded gun. So I don't think, again, I think that's the difference where you come into this imminent harm. A loaded gun, clearly there is imminent harm at the place of a child's playing with it. A flat piece of metal with four holes in it, when they're playing, smiling, they're not fighting, they're not aggressive. I don't know about that, counsel. Well, if the statute says that it's a weapon and unlawful to possess it, doesn't that suggest that it's a danger? Well, respectfully, a bat can be a weapon, too. But it's all in how you use it, it's how you intend to use it, and how you're handling it at the moment. No, no, no, no, no. A bat is only a weapon if there's the intent to use it to harm someone. The brass knuckles are illegal to possess. Correct, yes. Under any circumstance. Yes, they are. According to the statute. So the bat analysis really doesn't fit here. And I apologize for that. They still don't intrinsically, though, have this imminence of harm. Well, they must, or they wouldn't be considered a dangerous weapon under the statute. Possibly because there's no legitimate use, unlike a bat, for owning brass knuckles. But the statute does not, it does make them, per se, weapons, but it does not automatically mean that anybody in possession has the right to a necessity defense based on their possession of them. I'm not arguing he wasn't possibly right to take these away from these children. That's not the argument that I'm making. What I'm saying is beyond that initial taking, there were, one, opportunities to dispose of them, where nobody else got in trouble, including himself. You know, apartments have trash cans, apartment complexes have trash cans, parties have trash cans. And, I don't know, I was at a party at the Hoagland yesterday for about 70 lawyers, and there was one tiny little trash can for all their food. And yet you found it. You found the trash can. Don't take it out. And then there's also, again, this need for him, his conduct, to have prevented an imminent harm. And, again, he concedes there was no harm. Defense counsel concedes there was no harm. Today, there was no harm that his conduct avoided. So the state would say there was no abuse of discretion, and we would ask this court to approve. Thank you. Thank you. Donald, please. Please, the court, just a couple points. I disagree with the fact that they're saying there's no imminent harm. I mean, just because two kids are laughing, it doesn't mean that one kid couldn't have caught the other kid, punched him, and not realize the damage that brass knuckles can do with a fist. Are these boys or girls? I believe they're boys. They're called children. But you can't assume that children understand the same as adults, that if you hit someone with a brass knuckle, there's not going to be much harm. There might have been a lot of harm. As the belief counsel points out, brass knuckles, there's no other reason for brass knuckles but to hurt somebody. This reminds me of the argument in negligence cases that if you violated a traffic law, it's prima facie evidence of negligence. Is possession of a weapon, as defined under the statute, prima facie evidence of harm? Well, arguably, that's what the legislature has said, that this weapon is so dangerous that possessing it is a crime. You can't just use it for paperweight. Well, not under the statute, you can't use it at all. There's no other reason. You know, a bat, you can play softball with. Yeah, you can beat someone to death with it, but it has legitimate use. For brass knuckles, there's no legitimate use for them. Now, I don't know if I've seen them. I know I've seen them in movies, and I think they were described accurately. You just put them on your fist, and you hit somebody with them. That's the purpose of them. Taking the knuckles and putting them in his pocket, that was the sole alternative that he had to do? Taking them away from the kid certainly was the sole alternative. What he did with them afterwards, arguably, to me, is an issue of fact. I mean, that's the whole idea of this, very slight evidence. I mean, everyone seems to be conceding at this point that it was necessity when he took away the brass knuckles from the kid. So now we're talking about, well, how long can you hang on to them? And that seems to be an issue of fact. That seems to be very slight evidence. That seems to be enough to get this jury instruction. That's all you need is very slight, because it seems like the state has conceded that, at least at some point, he had the necessity to do that. That's certainly very slight evidence. Well, thank you. That's all I have. Thank you, counsel. The court will take the matter under advisory for disposition.